UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROYAL CLARK,<br><br>             Petitioner,<br><br>       vs.<br><br>KEVIN CHAPPELL, as Warden of San Quentin State Prison,<br><br>             Respondent. | Case No.: 1:12-cv-00803 – LJO<br><br><u>DEATH PENALTY CASE</u><br><br>ORDER VACATING  HEARING ON PETITIONER'S MOTION FOR ABEYANCE SET FOR JUNE 17, 2013, VACATING PRIOR ORDER REGARDING EXHAUSTION, AND ORDERING ADDITIONAL BRIEFING |

Petitioner Royal Clark ("Clark")  filed his federal petition for writ of habeas corpus March 18, 2013, challenging his state convictions for first degree murder, premeditated attempted murder, two counts of robbery, attempted rape, assault by force likely to produce great bodily injury, kidnapping, and false imprisonment, the special circumstance findings that the murder was committed in the commission of robbery and attempted rape, and for the purpose of preventing a victim's testimony, and the death sentence imposed by the Fresno County Superior Court on February 3, 1995, and affirmed by the California Supreme Court on automatic appeal on August 29, 2011.  *See People v. Clark*, 52 Cal.4th 856 (2011).  The parties met and conferred regarding the exhaustion status of the claim in the federal petition and filed a Joint Statement on Exhaustion May 2, 2013.  The parties agreed that Claims 1 through 23 in the federal petition had been fairly presented to the state court, that Claims 35 through 38 are unexhausted, and that Claim 39, a cumulative error claim previously presented to the

1

state court, must be presented again to permit the consideration of the cumulative effect of the addition of the unexhausted claims.

Clark filed a motion for stay and abeyance of his federal proceedings May 3, 2013, setting the motion for hearing on June 17, 2013. Respondent Kevin Chappell ("the Warden") filed a response to the motion May 31, 2013, and Clark filed a reply June 6, 2013. The hearing set for this motion on June 17, 2013, at 8:30 a.m., is vacated. Before issuing a ruling on the motion, the Court requests further briefing from both Clark and the Warden.

On May 7, 2013, this Court issued an order regarding the exhaustion status of the claims in Clark's federal petition, noting that there were no claims about which the parties disagreed about whether they were exhausted. That order stated that "[h]aving reviewed the relevant portions of the state record, and based on the parties' agreement," Claims 35, 36, 37, and 38 were found unexhausted, and Claim 39 was unexhausted to the extent it incorporated those unexhausted claims. Based on the parties' briefing regarding abeyance, and further review of the record, this Court's prior order on exhaustion is vacated.

**Summary of the Claims at Issue**

Claim 35 concerns a juror's admitted exposure to extrinsic evidence from a newspaper article, after the guilt phase verdict was issued but before the sanity phase began. Clark asserts the article contained a considerable amount of prejudicial information that was not presented to the jury at any stage of the trial, including the joy of the victim's family at the verdict, the victim's mother's opinion about Clark's criminal responsibility and punishment and her complimenting the jury's decision and holding them out as a beacon of justice in a broken system, or that Clark himself questioned the verdict. Clark argues none of this inflammatory information should have been seen by the juror, and possibly all the jurors, especially since they still had to decide the issue of his sanity and punishment.

Claim 36 asserts appellate counsel was ineffective in failing to raise issues apparent on the record, failing to raise issues completely, failing to state the full federal basis of all claims, and failing to adequately review, perfect and correct the record. The arguments underlying this claim are:

a. prosecutor improperly elicited confidential and privileged information about consultations between the defense and non-testifying defense experts;

b. prosecutor improperly urged the jurors, during the guilt phase, to consider whether Clark tried to have or had sex with the surviving victim;

c. prosecutor improperly urged the jurors, during the sanity phase, to speculate about a possible uncharged attempted sexual assault on the surviving victim;

d. prosecutor argued without any evidentiary support, in the guilt and penalty phases, that most of the experts consulted by the defense did not agree with the defense case presented to the jury;

e. prosecutor argued falsely and with reference to matters outside the record, in the sanity phase;

f. prosecutor improperly argued, in the penalty phase, that extreme mental or emotional disturbance under California Penal Code section 190.3, factor (d), equates to a "crime of necessity" like "trying to steal in order to feed his family;"

g. prosecutor argued matters not in evidence and urged speculation, in the guilt, sanity and penalty phases;

h. prosecutor intentionally and improperly made prejudicial comments and gestures before the jury;

i. prosecutor prejudicially tainted the jury by proffering inadmissible evidence;

j. prosecutor repeatedly examined Clark with questions that included inadmissible hearsay;

k. prosecutor intentionally engaged in a pattern of withholding and failing to disclose discovery to the defense in a timely manner;

l. verdicts were rendered in violation of constitutional rights to a trial by jurors of the

3

1  vicinage because one juror permanently moved to Sacramento during the trial and was no longer a
2  resident of Fresno County.
3       Claim 37 asserts impermissible racial bias affected all aspects of the charging, prosecution,
4  conviction and sentencing.   Clark contends he was prosecuted capitally because he is black and the
5  victims were white.  Clark asserts that during the period from 1977 to 1994, there is much
6  circumstantial evidence to indicate that the Fresno County District Attorney's Office used race as a
7  criterion in identifying the cases in which to seek a penalty of death, including in its decision his case.
8  Clark contends that evidence available through preliminary review of public court files, other publicly
9  available historical documents, the practices of members of the Fresno County District Attorney's
10 Office, and the practices of the prosecutor in his case discloses a stark pattern and practice of racial
11 discrimination, which reveals that racially discriminatory considerations substantially influence the
12 decision to charge and prosecute potential special circumstance murder cases in Fresno County.
13      Claim 38 asserts Clark was mentally incompetent at the time of trial and was deprived of his
14 right to an adequate, fair and reliable determination of competency.  Clark contends his functioning
15 during pretrial and trial proceedings was severely compromised by a myriad of psychological,
16 psychiatric, cognitive, emotional, social, and physical deficits.  Clark argues his delusional thought
17 processes, paranoia, bizarre, psychotic thoughts and behaviors, hallucinations, losses of touch with
18 reality, depression, anxiety, and suicidality had a profound effect on his ability rationally to consult
19 with and assist counsel in preparing a defense and to attend to the proceedings, and rendered him
20 incompetent. Clark alleges the trial court was aware of the extreme mental decompensation he was
21 suffering both before and after his competency trial and witnessed his inability to attend to the
22 proceedings and assist with his defense.  Clark contends the court was constitutionally required, based
23 on the evidence before it, to declare a doubt as to his competence and to suspend the proceedings, both
24 prior to and after the competency trial.  Clark alleges a reasonable jurist would have had a good faith
25 doubt about his competence based on the evidence, but because of the trial court's failure, Clark was
26 tried and sentenced without the constitutionally required determination that he was competent
27 throughout the trial proceedings.
28

**Standard for Holding Federal Proceedings in Abeyance for State Exhaustion**

The parties do not disagree on the pertinent standard for abeyance. Under *Rhines v. Weber*, 544 U.S. 269, 275 (2005), federal courts have authority to hold federal proceedings in abeyance to permit a petitioner to exhaust federal remedies in state court. This invariably occurs when a petitioner files a "mixed" petition, that is, a petition containing both exhausted and unexhausted claims. To be eligible for abeyance, a petitioner must establish that there is good cause for his/her failure to exhaust the claims in state court in the first instance and that the claims are not plainly meritless. *Id*., at 277. A petitioner seeking abeyance cannot have engaged in dilatory conduct. *Id.,* at 279 (conc. opn., Souter, J.); *Wooten v. Kirkland*, 540 F.3d 1019, 1023 (9th Cir. 2008).

Although abeyance is to be granted only in "limited circumstances," the Supreme Court also has held:

> [i]t likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.

*Rhines*, *supra,* 544 U.S. at 278.

**The Warden's Argument Against Abeyance**

The Warden argues Clark should not be granted abeyance. First, the Warden asserts that excepting Claim 38, the factual and legal bases for the unexhausted claims were known or available to Clark's state appellate or habeas counsel and could have been brought earlier. The Warden contends courts should be wary of finding that ineffective assistance of appellate or post-conviction counsel establishes good cause under *Rhines* due to the potential for unwarranted delays and frustrating the finality of the judgment. Second, the Warden alleges all of the unexhausted claims are plainly meritless, since the state court denied claims based on the underlying facts of Claims 35 and 36, and Claims 37 and 38, which were previously denied by the state court and now present additional evidence, still do not present sufficient evidence upon which to grant the claims.

**Clark's Argument in Favor of Abeyance**

Clark asserts he has met the requirements for abeyance under *Rhines v. Weber*, 544 U.S. 269 (2005). Clark contends there is good cause for not presenting the unexhausted claims earlier due to lack of funding during the state proceedings, state requirements which require a habeas petition to be filed prior to a decision on direct appeal thus foreclosing ineffective assistance of appellate counsel claims, and the ineffective assistance of state post-conviction counsel. Clark alleges the unexhausted claims are potentially meritorious, and that he has not engaged in intentionally dilatory litigation tactics, asserting the federal petition was filed less than nine months after the appointment of counsel, during which time they were required to review a large record, attempt to further develop the juror misconduct claim, and provide materials to assist the mental health expert to re-evaluate Clark's competence. Clark replies that although the Warden contends he may be engaged in intentional dilatory litigation tactics, the real argument seems to be about whether the unexhausted claims have merit. Clark disagrees that his unexhausted claims are meritless.

Clark asserts Claim 35 presents entirely different legal and factual bases than were presented to the state court on direct appeal. Clark also argues the allegations of Claim 35 undermine the findings by the California Supreme Court, in the trial court error claim, that the media coverage did not reveal information about Clark which was not adduced at trial and that there was no evidence to suggest any juror disregarded the court's directive to avoid media coverage.

Clark argues the ineffectiveness of post-conviction counsel is good cause for the failure to earlier present Claim 35. Clark asserts that original state post-conviction counsel requested the trial court's permission to contact the jurors, and the Superior Court issued an order March 27, 2006, allowing juror contact under limited circumstances. The Superior Court would initiate contact via registered letter, and if the jurors consented, then limited contact would be allowed. The Superior Court disclosed in December, 2006, that five jurors had consented to be contacted, one of which was Jess Lujan. Clark alleges that after receipt of Jess Lujan's declaration, original post-conviction counsel did not seek to amend the pending state habeas petition, which was timely filed on April 19, 2006, with the juror misconduct claim.

Clark contends the fact the state court rejected Claim 36 does not necessarily mean it is

1 meritless, as claims denied by the state court are often found to have merit on federal habeas review.
2 Although the state court's denial is based on a finding that the claim failed to state a prima facie case,
3 Clark alleges capital habeas counsel nearly always state a prima facie case in state habeas petitions.
4 Clark asserts Claim 36 is timely, as the ineffectiveness of appellate counsel could not have been raised
5 until there was prejudice from the California Supreme Court's imposition of procedural defaults for
6 the failure to raise the claims on direct appeal.

Clark observes, regarding Claims 37 and 38, that the Warden is now arguing they are exhausted, which contradicts the parties' stipulation. Clark asserts the Warden's argument that the two new cases presented in support of Claim 37 are distinguishable does not mean they are not similarly situated for the purposes of a racial bias claim. Clark rejects the Warden's contention that he has failed to prove a claim of selective prosecution, asserting that at this stage he is only required to plead a colorable claim, not prove every element of the claim.

Clark disputes the Warden's argument regarding Claim 38 that evidence existed at the time of trial upon which to base the diagnosis of erotonania (a fixed, false belief that another person is in love with the individual). Clark asserts the evidence available at the time of trial was insufficient to make this diagnosis, and that the addition of evidence from the Danielle Haddon case (a 1989 murder for which Clark was not charged until 2011) and the experiences of post-conviction counsel in 2002 and 2003, as well as the addition of federal funding for re-evaluation of Clark's mental health, were necessary to present the claim.

**Analysis**

The factual and legal basis of Claim 35 is different from the claim previously presented to the state court. On direct appeal, Clark asserted the trial court erred in denying trial counsel's motion, made after the guilt phase and before the sanity and penalty phases, to impanel a new jury or to question the jurors regarding exposure to media coverage. The California Supreme Court affirmed the trial court's denial of the motion, stating that there was no evidence presented that jurors were exposed to prejudicial publicity, and that there was no evidence prejudicial to Clark in the media coverage. Claim 35 raises a claim of juror misconduct based on a declaration by juror Jess Lujan that after the

guilt phase he read a newspaper article about the case which included, among other information, a report that the mother of the murdered girl danced at her grave because she was happy about the verdict. Claim 35 is a different claim than was presented on direct appeal, and is unexhausted.

The evidence supporting Claim 35 was not obtained by state habeas counsel prior to the date for timely filing Clark's habeas petition, but it is unclear why state habeas counsel did not seek to amend the state habeas petition, or file a supplemental habeas petition, with this jury misconduct claim. As diligence is required in order for abeyance to be granted, Clark is requested to brief why the failure of state habeas counsel to present the juror misconduct claim, either through seeking amendment of the initial state habeas petition or filing a second state habeas petition, meets the diligence requirement.

Claim 36 presents various alleged errors by the prosecutor which were included in Clark's state habeas corpus petition, which were rejected by the California Supreme Court as procedurally barred under *In re Dixon*, 41 Cal.2d 756, 759 (1953), because they could have been, but were not, raised on direct appeal. Claim 36 asserts the claim that appellate counsel was ineffective for failing to raise these errors on direct appeal. The Court is not persuaded by the Warden's assertion that the claim of ineffective assistance of appellate counsel is meritless because the state court denied the underlying prosecutorial misconduct claims, since the state court's ruling could have been, and likely was, based on procedural default, instead of on the merits. It does not necessarily follow that the denial of the prosecutorial misconduct claims on habeas review negates any prejudice for ineffectiveness of counsel. Claim 36 is unexhausted.

The Court is persuaded that Clark has demonstrated Claims 35, 36, 37, and 38 are not plainly meritless and that the appropriate inquiry is a limited facial examination. There is no reason to adjudicate any of the claims at this juncture; the issue is facial sufficiency.

In order to satisfy the exhaustion requirement, a state petitioner must describe the operative facts and federal legal theory on which he grounds his claim so the state court has a "'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curium) (quoting *Picard v. Connor*, 404 U.S. 270, 276 (1971)). Presenting supporting evidence to existing claims in federal court does not necessarily require

exhaustion of that evidence where a petitioner previously presented the substance of his or her claim(s) to the state court. *See Vasquez v. Hillery*, 474 U.S. 254, 257-58, 260 (1986) (rejecting challenge to new evidence because it did not fundamentally alter the legal claim the state courts previously considered).

In the present case, Claims 37 and 38 appear to be exhausted. The state petition set forth the legal bases for the claims and a comprehensive recitation of the operative facts. The Court is concerned that because Claims 37, and 38 appear to be exhausted (notwithstanding the parties' agreement to the contrary), they do not provide an appropriate basis for abeyance under *Rhines*. Accordingly, the Court invites the parties to explain in supplemental briefs how the presentation of additional evidentiary support for existing claims fundamentally alters those claims, rendering them unexhausted.

**Order**

Clark shall file a supplemental brief [***the term and concept "brief" is to be the focus here***] stating why the failure of state habeas counsel to present the juror misconduct claim, either through seeking amendment of the initial state habeas petition or filing a second state habeas petition, meets the diligence requirement. Both parties shall brief the issue of how the presentation of additional evidentiary support for existing claims fundamentally alters those claims, rendering them unexhausted. The supplemental briefs shall be filed by July 15, 2013. The matter will then stand submitted.

IT IS SO ORDERED.

Dated:   **June 14, 2013**              /s/ Lawrence J. O'Neill
                                        UNITED STATES DISTRICT JUDGE