UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROYAL CLARK,<br><br>　　　　Petitioner,<br><br>　　vs.<br><br>KEVIN CHAPPELL, as Warden of San Quentin State Prison,<br><br>　　　　Respondent. | Case No.: 1:12-cv-00803 – LJO<br><br>DEATH PENALTY CASE<br><br>ORDER GRANTING IN PART PETITIONER'S MOTION FOR STAY AND ABEYANCE OF FEDERAL PROCEEDINGS |

Petitioner Royal Clark ("Clark") filed his federal petition for writ of habeas corpus March 18, 2013. Doc. 21. The parties met and conferred regarding the exhaustion status of the claim in the federal petition and filed a Joint Statement on Exhaustion May 2, 2013. The parties agreed that Claims 1 through 23 in the federal petition had been fairly presented to the state court, that Claims 35 through 38 are unexhausted, and that Claim 39, a cumulative error claim previously presented to the state court, must be presented again to permit the consideration of the cumulative effect of the addition of the unexhausted claims.

Clark filed a motion for stay and abeyance of his federal proceedings May 3, 2013, setting the motion for hearing on June 17, 2013. Respondent Kevin Chappell ("the Warden") filed a response to the motion May 31, 2013, and Clark filed a reply June 6, 2013. The June 17, 2013, hearing set for this motion was vacated, the motion to be determined based on the pleadings submitted.

1

Claim 35 alleges the jury was exposed to extrinsic evidence from publicity between the guilt and sanity phases of trial. Claim 36 alleges appellate counsel was ineffective in failing to raise issues apparent on the record, failing to raise issues completely, failing to state the full federal basis of all claims, and failing to adequately review, perfect and correct the record. Claim 37 alleges impermissible racial bias affected all aspects of the charging, prosecution, conviction and sentencing. Claim 38 alleges Clark was mentally incompetent at the time of trial and was deprived of his right to an adequate, fair and reliable determination of competency.

Clark asserts he has met the requirements for abeyance under *Rhines v. Weber*, 544 U.S. 269 (2005). Clark contends there is good cause for not presenting the unexhausted claims earlier due to lack of funding during the state proceedings, state requirements which require a habeas petition to be filed prior to a decision on direct appeal thus foreclosing ineffective assistance of appellate counsel claims, and the ineffective assistance of state post-conviction counsel. Clark alleges the unexhausted claims are potentially meritorious, and that he has not engaged in intentionally dilatory litigation tactics.

The Warden argues Clark should not be granted abeyance. First, the Warden asserts that three of the four unexhausted claims could have been brought earlier and courts should be wary of finding that ineffective assistance of appellate or post-conviction counsel establishes good cause under *Rhines* due to the potential for unwarranted delays and frustrating the finality of the judgment. Second, the Warden contends all of the unexhausted claims are plainly meritless, since the state court denied claims based on the underlying facts of Claims 35 and 36, and Claims 37 and 38, which were denied by the state court and now present additional evidence, still do not present sufficient evidence upon which to grant the claims.

Clark replies that although the Warden contends he may be engaged in intentional dilatory litigation tactics, the Warden's real argument seems to be that all of the unexhausted claims are meritless. Clark asserts he has been diligent, and disagrees that his unexhausted claims are meritless.

Clark observes, regarding Claims 37 and 38, that the Warden is now arguing they are exhausted, which contradicts the parties' stipulation and court order that the claims are unexhausted. On June 14, 2013, this Court issued an order vacating the prior order regarding the exhaustion status

1  of Clark's federal petition, and requesting additional briefing from Clark regarding the diligence of
2  state habeas counsel as to the juror misconduct alleged in Claim 35, and from the Warden regarding
3  how the presentation of evidentiary support for previously presented Claims 37 and 38 fundamentally
4  alter these claims.  *See* Doc. 27.  The Warden admits in supplemental briefing that Claims 37 and 38
5  are in fact exhausted as the new evidence Clark presents does not transform the prior presented claims
6  into new claims.  Clark argues in his supplemental briefing that state habeas counsel was not
7  intentionally dilatory regarding the juror misconduct evidence in Claim 35, and that the stronger
8  evidentiary position from the additional documents presented in support of the federal petition render
9  Claims 37 and 38 unexhausted.

**Analysis**

**Claim 35**

Claim 35 alleges juror misconduct based on a juror's admitted exposure to a newspaper article, that was published after the guilt phase but before the sanity phase, about the victim's mother dancing in happiness over the victim's grave after the guilty verdicts.  The California Supreme Court found this newspaper article was not prejudicial publicity, because it "disclosed no information concerning *defendant* that had not been adduced at trial."  *People v. Clark,* 52 Cal.4th 856, 968 (2011). The Warden contends the state court finding that the newspaper article was not prejudicial forecloses finding any prejudice due to the juror's exposure to it.

Clark argues the good cause for the failure to present Claim 35 earlier is due to the ineffectiveness of post-conviction counsel.  Clark asserts that state post-conviction counsel during the first state habeas proceedings, who were appointed November 28, 2001, requested permission to contact the jurors.  The timing of the request is unknown, but the Superior Court issued an order March 27, 2006, allowing juror contact under limited circumstances.  The state habeas petition was timely filed on April 19, 2006.  California Supreme Court Case No. S142741.  The Superior Court initiated contact with the jurors via registered letter, and if the jurors consented, then limited contact by post-conviction counsel would be allowed.  The Superior Court disclosed in December, 2006, that five jurors had consented to be contacted, one of which was Jess Lujan.  Clark alleges that after receipt of Jess Lujan's declaration, original post-conviction counsel did not seek to amend the pending state

1 habeas petition with the juror misconduct claim.

2 The Warden contends the state court found the article non-prejudicial since it disclosed no
3 information about Clark that was not presented at trial, so the juror's admitted exposure it does not
4 state a meritorious claim.

5 Clark asserts Claim 35 presents entirely different legal and factual bases than were presented to
6 the state court on direct appeal.  Clark also argues the allegations of Claim 35 undermine the findings
7 by the California Supreme Court, in the trial court error claim, that the media coverage did not reveal
8 information about Clark which was not adduced at trial and that there was no evidence to suggest any
9 juror disregarded the court's directive to avoid media coverage.

10 On direct appeal, Clark asserted the trial court erred in denying Rothbaum's motion, made after
11 the guilt phase and before the sanity and penalty phases, to impanel a new jury or to question the
12 jurors regarding exposure to media coverage.  The California Supreme Court affirmed the trial court's
13 denial of the motion, stating there was no evidence presented showing jurors disregarded the trial
14 court's admonition to avoid all media coverage, and that none of the media coverage was innately
15 prejudicial to Clark.  *People v. Clark, supra,* 52 Cal.4th at 968.  Claim 35 raises a claim of misconduct
16 based on a declaration by juror Jess Lujan that after the guilt phase he read a newspaper article about
17 the mother of the murdered girl dancing at her grave because she was happy about the verdict.  This is
18 a different claim from what was presented on direct appeal, and it is unexhausted.

19 Claim 35 potentially has merit as Clark alleges Juror Lujan admits to mistakenly violating the
20 trial court's order to avoid news articles during the trial, and there is no indication that Clark has been
21 intentionally dilatory in federal court.  This evidence was not obtained by state habeas counsel prior to
22 the date  for timely filing of Clark's habeas petition, but it is unclear why state habeas counsel did not
23 seek to amend, or file a supplement to, the state habeas petition asserting this jury misconduct claim.

24 Clark asserts in his supplemental brief that state habeas counsel was not intentionally dilatory
25 and contends there is no indication they dragged their feet on this claim.  State habeas counsel relate
26 that when the juror misconduct information was discovered they decided, for reasons which now
27 cannot be recalled, to give the information to direct appeal counsel and not use it themselves.  Clark
28 argues that in the event this claim is defaulted by the state court, evidence about what occurred during

4

state habeas proceedings may become relevant, and prior counsel's decision-making could be questioned at that time. For the present purposes, Clark asserts there is no indication state habeas counsel engaged in "intentionally dilatory litigation tactics" and the diligence requirement is met.

Clark argues there is good cause for failing to present Claim 35 earlier is due to the ineffectiveness of post-conviction counsel, but that state habeas counsel was not intentionally dilatory. California does not limit the number of habeas petitions which can be presented, and mainly imposes a timeliness bar, which would have applied to this claim at the time the juror misconduct information was discovered. Although Clark has not explained why the juror misconduct information was not obtained earlier, or why a second habeas petition was not presented when the evidence was obtained, there is no clear bar in state court to presenting this claim at this time.

This claim is unexhausted and Clark has met the requirements of *Rhines* for abeyance of Claim 35.

**Claim 36**

Clark alleges ineffective assistance of appellate counsel for failing to raise particular arguments on direct appeal, as follows:

That the prosecutor erred by --

1) improperly elicited confidential and privileged information about consultations between the defense and non-testifying defense experts;
2) improperly urged the jurors, during the guilt phase, to consider whether Clark tried to have or had sex with the surviving victim;
3) improperly urged the jurors, during the sanity phase, to speculate about a possible uncharged attempted sexual assault on the surviving victim;
4) argued without any evidentiary support, in the guilt and penalty phases, that most of the experts consulted by the defense did not agree with the defense case presented to the jury;
5) argued falsely and with reference to matters outside the record, in the sanity phase;
6) improperly argued, in the penalty phase, that extreme mental or emotional disturbance under California Penal Code section 190.3, factor (d), equates to a "crime of necessity" like "trying to

      steal in order to feed his family;"

7)  argued matters not in evidence and urged speculation, in the guilt, sanity and penalty phases;

8)  intentionally and improperly made prejudicial comments and gestures before the jury;

9)  prejudicially tainted the jury by proffering inadmissible evidence;

10) repeatedly examined Clark with questions that included inadmissible hearsay; and

11) intentionally engaged in a pattern of withholding and failing to disclose discovery to the defense in a timely manner.

The claim that the verdicts were rendered in violation of constitutional rights to a trial by jurors of the vicinage because one juror permanently moved to Sacramento during the trial and was no longer a resident of Fresno County was presented in the first state habeas petition and rejected as barred under *In re Dixon*, 41 Cal. 2d 756, 759 (1953), because it could have been, but was not, raised on direct appeal.

      Clark asserts that appellate counsel's performance was below reasonable standards of representation and to the extent counsel's performance limits the consideration of claims in his federal petition, he has been prejudiced.

      The Warden observes Clark acknowledges these arguments were all raised in his state habeas petition, but contrary to Clark's apparent suggestion, the Warden contends the state court did not rely solely on procedural default grounds in rejecting these arguments, but rejected them on the merits as well.  The Warden alleges this claim is meritless, and that failure to raise meritless argument does not constitute ineffective assistance.

      Clark contends the mere fact the state court rejected Claim 36 does not necessarily mean it is meritless.  Clark asserts that claims denied by the state court are often found to have merit on federal habeas review.  Although the state court's denial is based on a finding that the claim failed to state a prima facie case, Clark alleges capital habeas counsel nearly always state a prima facie case in state habeas petitions.  Clark concludes allegation that appellate counsel was ineffective is timely, as that claim could not have been raised until the California Supreme Court imposed procedural defaults for the failure to raise the claims on direct appeal, and the state court has not reviewed whether appellate counsel was ineffective for failing to raise this claim.

Clark doesn't dispute the Warden's assertion that all these arguments were raised in his first state habeas petition. The underlying claims of Rothbaum's ineffective assistance at trial were presented on state habeas, but this claim asserts appellate counsel was ineffective for failing to raise these claims on direct appeal, instead of on state habeas, since they were record based. This claim is unexhausted and Clark has met the requirements of *Rhines* for abeyance of Claim 36.

**Claim 37**

Clark alleges racial bias affected all aspects of his case, from charging to sentencing. Clark acknowledges this claim was fully exhausted, but says he has additional evidence of two cases, contemporaneous to his case, in which "non-black murder defendants were not capitally charged" where the circumstances of the crimes or other factors were clearly more egregious than the circumstances in his case. Clark asserts the evidence of these two cases are sufficient to meet the threshold showing required by *United States v. Armstrong*, 517 U.S. 456, 464 (1996).

The Warden disagrees that the new cases show the Fresno County District Attorney's Office declined to seek the death penalty against similarly situated murder defendants of other races, asserting that one of the cases was pursued as a death penalty prosecution and the defendant agreed to a plea bargain, and the other case involved a defendant who was not the person who pulled the trigger, and without more particulars regarding criminal history, strength of evidence and mitigation, there is insufficient evidence to determine whether that case and Clark's are similarly situated. The Warden alleges this claim is meritless.

The Warden, in his supplemental brief, reverses his stand on this claim's exhaustion status, asserting now that new evidence which does not fundamentally change the claim presented does not make the claim exhausted. The Warden contends the additional evidence submitted in support of Clark's federal petition of two cases contemporaneous to Clark's case in which "non-black murder defendants were not capitally charged [where] the circumstances of the crimes or other factors were clearly more egregious than the circumstances in [his] case" does not fundamentally alter the legal basis or the substance of the claim already considered by the state court. The Warden argues since the new evidence does not fundamentally alter this claim, nor does it place the claim in a significantly

7

1  stronger evidentiary position, the claim is exhausted and a stay is not appropriate.

2  Clark asserts the Warden's argument that the two new cases presented in support of Claim 37 are distinguishable does not mean they are not similarly situated for the purposes of a racial bias claim. Clark asserts in his supplemental brief that as altered Claim 37 is not fully exhausted as the new evidence places it in a "significantly different and stronger evidentiary posture than it was when the state courts considered it." *Aiken v. Spalding*, 841 F.2d 881, 883 (9th Cir. 1988). Clark contends the evidence of contemporaneous cases provides direct evidence of "similarly situated defendants" who were treated differently on account of their race, and the lack of such evidence in the prior state habeas petition left Clark unable to establish entitlement to further factual development. *Armstrong, id.* Clark asserts this claim is much stronger with the new evidence, and the state court should be given the opportunity to evaluate it.

The parties agree that the legal and factual bases of this claim were presented to the state court, but disagree about whether the evidence from two cases contemporaneous to Clark's case merely provide additional support for the claim, or place it in a significantly different and stronger evidentiary posture.

The standard for bringing a selective prosecution claim is demanding, requiring Clark to present clear evidence to dispel the presumption that the prosecutor has not violated equal protection. *Armstrong,* 517 U.S. at 465. To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted. *Id.* The definition of "similarly situated" is informed by legitimate factors which may motivate a prosecutor's charging decision, including "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan." *Id.* For selective prosecution purposes, a "similarly situated" person has been defined as one who engaged in the same type of conduct, that is the same basic crime committed in substantially the same manner—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant. *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000).

1 Comparing the capital prosecution of Clark with the non-capital prosecution of Susan Russo
2 and Marco Hernandez, it is necessary to determine if the defendants in those two cases are "similarly
3 situated" to Clark.  Susan Russo's crime involved the murder of her husband in conspiracy with two
4 other persons, with special circumstances of lying in wait and murder for financial gain.  Marco
5 Hernandez's crime involved, with another man, the murder of two victims in separate incidents,
6 alleging rape felony murder and sodomy felony murder for both, and oral copulation felony murder
7 and multiple murder for one, as well as the murder of one of the victim's fetus.  A rape victim who
8 survived testified against Hernandez.  The death penalty was initially sought against Hernandez, but it
9 was dropped and he plead to two counts of murder.

10 Clark asserts the Hernandez case is especially significant, as it involved repeated sex crimes
11 against three young women, two of whom were teenagers like Laurie Farkas.  Clark argues that his
12 case is less egregious than Hernandez as there was no completed sex crimes, and the evidence for all
13 three special circumstances (murder in the course of robbery and in the course of rape, to prevent
14 witness testimony) is ephemeral, but asserts that he is African-American with a white victim, where
15 Hernandez and his victims were all Hispanic.  Clark's case is does not present the same crime
16 committed in the same manner as Russo's.  There are some similarities between Clark's case and
17 Hernandez's, but the death penalty was charged in both cases, and that it was dropped is more likely a
18 product of available evidence rather than race.  Clark has not shown clear evidence to overcome the
19 presumption that the prosecutor properly discharged his official duties.  *Armstrong*, 517 U.S. at 464.
20 Claim 37 is exhausted.

**Claim 38**

Clark alleges he was mentally incompetent to stand trial at the time he was tried in 1993 and 1994.  Clark notes this claim is fully exhausted, but asserts he has additional evidence to bolster a finding that he was incompetent to stand trial, specifically, new information which informs Dr. George Woods' report.  Dr. Woods states his earlier opinion -- that Clark's ability to communicate with his attorneys and to assist them with his defense was impaired -- is reinforced by new information from the circumstances surrounding the 1989 murder of Danielle Haddon in Long Beach.  Based on

similarities between the circumstances surrounding the murders of Laurie Farkas and Danielle Haddon, Dr. Woods describes Clark as having "erotomanic delusions" which impaired his relationships with his female counsel, preventing him from accurately relating to counsel what took place during the time leading up to and culminating in his criminal behavior and making it impossible for him to fully attend, accurately interpret, respond rationally, and make rational decisions.

The Warden contends Dr. Woods' updated report and opinion should not be deemed new evidence, because there was evidence upon which a mental health expert could have made the erotomanic delusions diagnosis prior to trial, and the evidence concerning the 1989 Haddon murder was available, or reasonably could have been available, to Clark, Rothbaum, and the mental health professionals who evaluated Clark during the state competency trial and for the state habeas petition. The Warden concludes the new report by Dr. Woods is not new evidence, as it neither fundamentally alters this claim nor places the claim in a significantly stronger evidentiary position. The Warden argues this claim is exhausted and a stay is not appropriate.

Even if Dr. Woods' updated report and opinion is considered, the Warden argues it does not undermine the reliability of the determination that Clark was competent to stand trial, as nothing suggests this new information would alter the other evaluating mental health experts' opinions, nothing suggests Clark had erotomanic delusions about his female trial counsel, nothing suggests that even if Clark had an erotomanic delusion it would render him incapable of assisting counsel with the conduct of a defense in a rational manner, and whether or not communication between Clark and his female counsel was impaired, a male attorney was appointed to facilitate communication – who later became a co-counsel. The Warden alleges this claim is meritless.

Clark disputes the Warden's argument that evidence existed at the time of trial upon which to base Claim 38, and asserts the evidence available at the time of trial was insufficient without the addition of evidence from the Danielle Haddon case and the experiences of post-conviction counsel. Clark alleges these claims are sufficiently pled colorable claims, and that he expects to prove the claims at a subsequent evidentiary hearing.

Clark asserts in his supplemental brief that as altered Claim 38 is not fully exhausted as new evidence places it in a "significantly different and stronger evidentiary posture than it was when the

10

state courts considered it." *Aiken v. Spalding*, 841 F.2d 881, 883 (9th Cir. 1988). Clark contends that his mental illness prevented him from communicating to trial counsel his best defense of erotomanic delusions. Clark asserts the difference between the prior and current version of this claim is that a paranoid defendant is not necessarily incompetent if there is nothing he is failing to communicate to his attorneys, but a delusional defendant, who cannot share his delusional thinking, is not able to rationally assist in his defense. Clark asserts the state court has never had before it a request to develop the facts of the claim in its current evidentiary posture.

The parties agree the legal and factual bases of this claim were presented to the state court, but disagree about whether the evidence from the 1989 Haddon case merely provides additional support for the claim, or places it in a significantly different and stronger evidentiary posture.

Dr. Woods' current report asserts that although there was evidence to support an erotomanic aspect to Clark's delusions during the first state habeas proceedings, however, it was not strong enough to make it part of the definitive diagnosis. The additional information about the Haddon homicide allows Dr. Woods to say with a reasonable degree of medical certainty that Clark suffers from erotomanic delusions, which is often simultaneous with persecutory delusions, and common in patients with major depressive disorder with psychotic features like Clark. Dr. Woods observes that this condition has impacted Clark's relationship with female attorneys at trial and on post-conviction, and it also gives insight into Clark's relationship with the victim, Laurie Farkas. The additional evidence reinforces Dr. Woods' conclusion that Clark was not competent at trial, as he was not able to rationally assist his attorneys.

The additional evidence from the Haddon murder and the experiences of post-conviction counsel place this claim in a significantly different posture than the previous claim which was presented to the state court. This claim is unexhausted and Clark has shown good cause under *Rhines* for abeyance of Claim 38.

**Claim 39**

To the extent that this cumulative error claim incorporates the claims found to be unexhausted above, it is also determined to be unexhausted.

11

**Conclusion**

Claims 35, 36, and 38 are determined to be unexhausted.  Claim 39 also is determined to be unexhausted, to the extent it incorporates the claims which are unexhausted.  Clark has shown good cause under *Rhines* to hold his federal proceedings in abeyance.

Clark's motion to stay his federal petition and hold the federal proceedings in abeyance pending the completion of state exhaustion proceedings is GRANTED.  Clark is directed to file his state exhaustion petition within 60 days of the date of this order.  Clark's federal petition will be held in abeyance until the California Supreme Court rules on his state exhaustion petition.  It is expected that the only costs counsel will incur during abeyance will be for occasional client visits.  During the pendency of state exhaustion proceedings, Clark shall file quarterly status reports commencing on or about the 15th of the month beginning in November, 2013, until the conclusion of the state proceedings.  Upon that occurrence, Clark shall immediately notify the Court of the disposition of the state proceedings, and if his state petition is denied, he shall schedule a status hearing in this Court within 30 days of the state denial.

IT IS SO ORDERED.


DATED: August 21, 2013                             /s/ Lawrence J. O'Neill
                                                  LAWRENCE J. O'NEILL
                                                  United States District Judge